IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROLE MACDONALD, et al., | : | |
|     Plaintiffs, | : | |
| | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 12-1705 |
| | : | |
| UNISYS CORPORATION, | : | |
|     Defendant. | : | |

June _12_, 2013                                                            Anita B. Brody, J.

## MEMORANDUM

      Plaintiffs Carole MacDonald, Marilyn Salisbury, John Golisz, Richard Takac, Juanita Cluffer-Washington, and Hexin McPhee bring this action against Defendant Unisys Corporation ("Unisys") for violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiffs bring this action individually and as a collective action on behalf of themselves and all other former Unisys internal IT department employees who were located in the United States and were forty years old or older at the time of their terminations, pursuant to the ADEA, 29 U.S.C. § 626(b), incorporating section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b). I exercise federal jurisdiction over Plaintiffs' ADEA claims, pursuant to 28 U.S.C. § 1331. Unisys has filed a Motion to Dismiss and Compel Arbitration. For the reasons set forth below, I will deny Unisys' motion.

## I. BACKGROUND[1]

      Plaintiffs Carole MacDonald, Marilyn Salisbury, John Golisz, Richard Takac, Juanita Cluffer-Washington, and Hexin McPhee are former employees of Defendant Unisys. In 2010, Unisys entered into a Master Services Agreement with Hexaware Technologies, Inc.

---

[1] All facts are taken from the Complaint unless otherwise noted.

("Hexaware"), an IT outsourcing services corporation. Pursuant to the Master Services Agreement, Unisys agreed to outsource a portion of its internal IT function to Hexaware. As a result of the Master Services Agreement to outsource, Unisys decided to terminate Plaintiffs and many other internal IT department employees. All of the internal IT department employees in the United States that Unisys decided to terminate were immediately offered employment with Hexaware. Unisys informed the terminated employees that if they did not accept employment with Hexaware, they would be considered "to have voluntarily resigned," and would not be eligible for severance or state unemployment benefits. Compl. Ex. H.

Not every employee in the internal IT department was terminated. Unisys provided no rationale for how it selected which employees to terminate in the internal IT department. Those selected by Unisys for termination were "predominantly older, more senior workers"; whereas those retained by Unisys were "younger, less-experienced employees." Compl. ¶ 37. In total, approximately 230 Unisys employees worldwide were terminated in April 2010 or shortly thereafter. In the United States, 77 Unisys employees were terminated and then offered employment by Hexaware, and 76 accepted Hexaware's employment offer. Of the 77 employees who were terminated by Unisys, 70 were age 40 or older.

Plaintiffs were among the 76 employees in the United States who were terminated by Unisys, and accepted Hexaware's employment offer. Plaintiffs were terminated by Unisys in April 2010. Before beginning their employment with Hexaware, Plaintiffs entered into Employment Agreements with Hexaware. Each Employment Agreement established that Plaintiffs' employment with Hexaware would begin on May 1, 2010. Def.'s Mot. Exs. B-G ¶ 1. Additionally, each Employment Agreement contained the following arbitration clause: "Any disagreement or claim . . . arising out of or relating to the terms and conditions of your

2

employment or this Agreement, the breach thereof, or its termination (an "Arbitrable Dispute") shall be finally settled by arbitration . . . ." *Id.* at ¶ 17. Furthermore, each Employment Agreement stated: "This [Agreement] is executed in and shall be governed by and construed in accordance with the laws of the State of New Jersey without giving effect to any conflict of laws provision." Def.'s Mot. Exs. B-F ¶ 23, G ¶ 24.

During the months of May, June, and July 2010, the former Unisys employees who were now working for Hexaware, continued to report to the same Unisys managers at the same office locations and sit at their same workstations. Moreover, these employees continued to use their Unisys email addresses, phone numbers, sign-on names, passwords, ID badges, and keys.

Plaintiffs' employment with Hexaware did not last long. Less than six months to a year after beginning their employment with Hexaware, Unisys directed Hexaware to terminate Plaintiffs.

Plaintiffs' allege that their "termination by Unisys, immediate hiring by Hexaware, and eventual termination by Hexaware constituted a 'sham transfer' which was orchestrated by [Unisys] in an effort to eliminate older workers from its workforce." Compl. ¶¶ 84, 106, 131, 154, 176, 200. Thus, Unisys initiated this "two-step process of termination," and "instructed Hexaware to terminate certain older workers from Hexaware as a final step in the effort to eliminate older workers from [Unsisys'] workforce." *Id.* at ¶¶ 58, 85, 107, 132, 155, 177, 201.

## II.  LEGAL STANDARD

In deciding a motion to compel arbitration, a district may either employ the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) or the motion for summary judgment standard under Federal Rule of Civil Procedure 56. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, No. 12-1170, —F.3d—, 2013 WL 2302324, at *5-8 (3d Cir. May 28, 2013).

The Third Circuit has provided the following guidance on when each standard is appropriate to apply:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question.

*Id.* at *8 (citation omitted) (internal quotation marks omitted). "Indeed, any time the court must make a finding to determine arbitrability, pre-arbitration discovery may be warranted." *Id.* at *8 n.5. If a court denies a motion to compel arbitration under Rule 12(b)(6) to allow discovery on the question of arbitrability, "[a]fter limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id.* at *8.

Unisys brings its motion to dismiss and compel arbitration under Rule 12(b)(6).[2] Unisys, a nonsignatory to the Employment Agreements entered into between Hexaware and Plaintiffs,

---

[2] A motion to dismiss should be granted under Rule 12(b)(6) if the moving party "under any reasonable reading of the complaint . . . may be entitled to relief." *Kerchner v. Obama*, 612 F.3d 204, 207 (3d Cir. 2010) (internal quotation marks omitted). The complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). This "assumption of truth" is "inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949-50.

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a

seeks to enforce the arbitration clauses contained in the Employment Agreements. A key question in this case is whether the claims against Unisys are subject to an enforceable agreement to arbitrate; therefore, the appropriateness of deciding this motion under Rule 12(b)(6) is at issue.

## III. DISCUSSION

In Count I, Plaintiffs allege that Unisys violated the ADEA when it terminated internal IT department employees in April 2010. Plaintiffs bring Count I on behalf of themselves and all other Unisys internal IT department employees located in the United States age 40 or older who were terminated by Unisys in April 2010. In Count II, Plaintiffs allege that Unisys violated the ADEA when it directed Hexaware to terminate its employees who had formerly worked for Unisys in the internal IT department. Plaintiffs bring Count II on behalf of themselves and all other Unisys internal IT department employees located in the United States age 40 or older who were terminated by Unisys in April 2010 and were shortly thereafter terminated from employment with Hexaware. Unisys moves to dismiss and compel arbitration of Plaintiffs' claims against it based on the arbitration provisions contained in the Employment Agreements Plaintiffs entered into with Hexaware.

Both parties agree that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs this dispute. The FAA "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at*

---

document integral to or explicitly relied upon in the complaint may be considered . . . ." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (citations omitted) (internal quotation marks omitted). Thus, a court may "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). Further, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

*Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009).  "Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate and its refusal to put such agreements on the same footing as other contracts, and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." *Id.* (citations omitted).  "Because arbitration is a matter of contract, before compelling arbitration pursuant to the Federal Arbitration Act, a court must determine that (1) an enforceable agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement*."* *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citation omitted).  "It is well established that the Federal Arbitration Act (FAA), reflects a strong federal policy in favor of the resolution of disputes through arbitration.  But this presumption in favor of arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Id.* (citation omitted) (internal quotation marks omitted); *see also Century Indem.*, 584 F.3d at 527 (concluding that the presumption in favor of arbitrability "probably does not apply" to whether a valid agreement to arbitrate exists).

"When a dispute consists of several claims, the court must determine on an issue-by-issue basis whether a party bears a duty to arbitrate."  *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

### A.  Count I

In Count I, Plaintiffs allege that Unisys violated the ADEA when it terminated internal IT department employees in April 2010.  Unisys argues that the arbitration provisions in the Employment Agreements between Plaintiffs and Hexaware compel arbitration of this claim.  Plaintiffs contend that arbitration cannot be compelled for two reasons: (1) valid agreements to arbitrate do not exist between Plaintiffs and Hexaware; and (2) even if valid arbitration

agreements exist, the April 2010 terminations do not fall within the scope of the arbitration agreements.  There is no need to determine whether valid agreements to arbitrate exist because the 2010 terminations do not fall within the scope of the arbitration agreements.

"An order to arbitrate ... should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *First Liberty Inv. Grp. v. Nicholsberg*, 145 F.3d 647, 653 (3d Cir. 1998) (internal quotation marks omitted).  In this case it can be said with positive assurance that the April 2010 terminations do not fall within the scope of the arbitration provisions in the Employment Agreements.  The arbitration provisions in the Employment Agreements provide: "Any disagreement or claim . . . arising out of or relating to the terms and conditions of your employment or this Agreement, the breach thereof, or its termination (an "Arbitrable Dispute") shall be finally settled by arbitration . . . ." Def.'s Mot. Exs. B-G ¶ 17.  The language of the Employment Agreements indicates that the Employment Agreements were given to Plaintiffs as "an offer of employment with Hexaware Technologies, Inc," and their purpose was to "memorialize the initial terms of [Plaintiffs'] employment with Hexaware." *Id.*  Thus, the arbitration provisions in the Employment Agreements mandate only arbitration of disagreements or claims arising out of Plaintiffs' employment with Hexaware, including disputes over the initial terms of their employment memorialized in the Employment Agreements.

As stated in the Employment Agreements, Plaintiffs employment with Hexaware did not begin until May 1, 2010.  In April 2010, Plaintiffs were terminated by Unisys.  Following the April 2010 terminations, they began their employment with Hexaware.  The April 2010

7

terminations do not arise from or relate to Plaintiffs' employment with Hexaware.[3] Therefore, they are not within the scope of the arbitration provisions. On Count I, I will deny Unisys' motion to dismiss and compel arbitration.

### B.  Count II

In Count II, Plaintiffs allege that Unisys violated the ADEA when it directed Hexaware to terminate its employees who had formerly worked for Unisys in the internal IT department. Unlike in Count I, both parties agree that if Unisys can enforce the arbitration clauses in the Employment Agreements entered into between Plaintiffs and Hexaware that Count II falls within the scope of these arbitration provisions. No one contests that valid agreements to arbitrate exist between Plaintiffs and Hexaware, the signatories to the Employment Agreements. However, the parties dispute whether Unisys, a non-signatory to the Employment Agreements, can enforce the arbitration provisions against Plaintiffs. Unisys argues that it can enforce the arbitration provisions in the Employment Agreements for two reasons: (1) Unisys is the third-party beneficiary of the Employment Agreements; and (2) the doctrine of equitable estoppel applies.

---

[3] In Unisys' view the April 2010 terminations by Unisys and the later terminations by Hexaware should not be treated as two distinct separate terminations because Plainitffs allege in their Complaint that their terminations from Unisys were really a "sham transfer" to Hexaware and part of a "two-step process of termination" that culminated with Hexaware's termination of Plaintiffs. Unisys argues that because the April 2010 terminations were part of a continuing scheme by Unisys and Hexaware to terminate older employees, the April 2010 terminations arise out of or relate to Plaintiffs' employment with Hexaware. There is no dispute, however, that Plaintiffs were terminated in April 2010 by Unisys, and later terminated by Hexaware. In Count I, Plaintiffs seek redress for the April 2010 terminations by Unisys. They bring Count I on behalf of themselves and all other Unisys internal IT department employees located in the United States age 40 or older who were terminated by Unisys in April 2010. In Count II, Plaintiffs seek redress for their later terminations by Hexaware. They bring Count II on behalf of themselves and all other Unisys internal IT department employees located in the United States age 40 or older who were terminated by Unisys in April 2010 and were shortly thereafter terminated from employment with Hexaware. Thus, Counts I and II address two distinct adverse employment actions on behalf of distinct classes of similarly situated individuals. Without a doubt, the arbitration provisions Plaintiffs entered into with Hexaware that mandated arbitration of employment disputes arising out of or related to their employment that began on May 1, 2010 did not cover Plaintiffs' pre-May 1, 2010 terminations from Unisys.

Plaintiffs contend that state law governs both the third-party beneficiary and equitable estoppel analysis. While Unisys agrees that whether it is a third-party beneficiary is a matter of state law, it argues that whether equitable estoppel applies is a matter of federal common law.

In *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), the Supreme Court reversed the Sixth Circuit's denial of a motion to stay under § 3 of the FAA, which entitles litigants in federal court to stay any action that is "referable to arbitration under an agreement in writing." 9 U.S.C. § 3. The parties seeking the stay were not parties to the arbitration agreement. *Carlisle*, 556 U.S. at 626. The Sixth Circuit had made the "underlying determination that those who are not parties to a written arbitration agreement are categorically ineligible for relief." *Id.* at 629. The Supreme Court rejected the Sixth Circuit's determination and held that a non-signatory to an arbitration agreement may compel a signatory to arbitrate "if the relevant state contract law allows him to enforce the agreement." *Id.* at 632. As the Court explained:

> Because "traditional principles" of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel, the Sixth Circuit's holding that nonparties to a contract are categorically barred from § 3 relief was error.

*Id.* at 631. (citation omitted) (internal quotation marks omitted). Rather than decide "whether the relevant state contract law recognizes equitable estoppel as a ground for enforcing contracts against third parties," the Supreme Court remanded the case to the Sixth Circuit to make the determination. *Id.* at 632.

"Before *Arthur Andersen* made it clear that state law governs who may be bound to an arbitration clause, many of the federal cases involving equitable estoppel did not refer to any particular state's law or purport to determine how a particular state's highest court would rule." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 Fed. Appx. 704, 708 n.2 (10th Cir.

9

2011). Post-*Arthur Andersen*, several Courts of Appeals have recognized the Supreme Court's holding in *Arthur Andersen* that state law governs the equitable estoppel analysis, and have applied state law to determine whether equitable estoppel mandates arbitration. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen* and applying California law to the equitable estoppel analysis); *Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1170-72 (discussing *Arthur Andersen* and applying Georgia law to the equitable estoppel analysis); *Lenox*, 449 Fed. Appx. at 708-09 (citing *Arthur Andersen* and recognizing that Colorado law governs the equitable estoppel analysis); *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 732 (8th Cir. 2009) (citing *Arthur Andersen* and applying Mississippi law to the equitable estoppel analysis). *But see Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126-28 (2d Cir. 2010) (failing to mention *Arthur Andersen* and failing to cite to any particular state law). Moreover, the Third Circuit has recognized pre-*Arthur Andersen* that state law applies to determine whether nonparties may be bound by an arbitration agreement. *Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, 559 F.3d 164, 170 (3d Cir. 2009) ("[W]e have recognized five theories for binding nonsignatories to arbitration agreements: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter-ego, (5) estoppel. Rapid Settlements has not demonstrated that any of those concepts are applicable here under Pennsylvania law." (citation omitted) (internal quotation marks omitted)).

Post-*Arthur Andersen* it is incontrovertible that state law governs the equitable estoppel and third-party beneficiary determinations. Plaintiffs explicitly state that they believe Pennsylvania law applies. Unisys exclusively applies Pennsylvania law to its third-party beneficiary analysis. Moreover, the only state law Unisys applies to its equitable estoppel

10

analysis is Pennsylvania law.[4] Despite both parties reliance on Pennsylvania law, the Employment Agreements at issue state: "This [Agreement] is executed in and shall be governed by and construed in accordance with the laws of the State of New Jersey without giving effect to any conflict of laws provision." Def.'s Mot. Exs. B-F ¶ 23, G ¶ 24. Choice of law is determined by the forum jurisdiction, and would normally be at issue in this case. *Zicherman v. Korean Air Lines Co., Ltd.*, 516 U.S. 217, 228-29 (1996). However, a choice of law inquiry is not necessary here because both parties agree that Pennsylvania law applies.[5] *Id.* (stating that a choice of law analysis was not required because the parties agreed upon the law to be applied); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) ("Here, the parties' briefs assume that New York law controls this issue, and such implied consent ... is sufficient to establish choice of law." (internal quotation marks omitted)).

The parties agree that Pennsylvania law is the proper state law to apply to the equitable estoppel analysis. However, neither party has provided adequate briefing on Pennsylvania's

---

[4] According to Unisys: "[F]or reasons similar to those recognized under federal common law, Pennsylvania courts also recognize that a non-signatory may enforce an arbitration agreement 'when there is an obvious and close nexus between the non-signatories and the contract or the contracting parties.'" Def.'s Reply 8 (quoting *Dodds v. Pulte Home Corp.*, 909 A.2d 348, 351 (Pa. Super. 2006)) (citing *Wellington v. W. Dev. Co.*, No. 00992, 2011 WL 1524171 (Pa. Com. Pl. Mar. 17, 2011)).

[5] After Unisys relied exclusively on Pennsylvania law in its memorandum in support of its motion, Plaintiffs pointed out in their response that Unisys had not explicitly stated that Pennsylvania law applied. Additionally, Plaintiffs pointed out that Unisys had not argued that New Jersey law applied even though the Employment Agreements included a provision that they were to be governed and construed in accordance with New Jersey law. Pls.' Resp. 16 n.50. Despite being alerted to this potential choice of law issue, Unisys continued to rely exclusively on Pennsylvania law in its reply. A choice of law inquiry is not necessary because the parties are in agreement that Pennsylvania law applies. Moreover, Unisys' failure to object to the use of Pennsylvania law may constitute a waiver of the choice of law issue. *See Neely v. Club Med Mgmt. Servs., Inc.*, 63 F.3d 166, 180 (3d Cir. 1995) (en banc) ("[C]hoice of law issues may be waived."). *But see Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 646 (3d Cir. 1958) (choice of law questions cannot be waived). *See generally Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 301 (3d Cir. 2012) ("[W]e have not adopted a consistent rule regarding whether choice-of-law issues can be waived. . . . In *Neely v. Club Med Mgmt. Servs.*, 63 F.3d 166, 180 n. 10 (3d Cir. 1995) (en banc), however, we deemed the choice-of-law question waived. *Neely*, however, did not overrule *Parkway Baking* specifically or even address the case." ).

interpretation of equitable estoppel in the arbitration context.  Admittedly, there is no controlling decision from the Supreme Court of Pennsylvania on the applicability of the doctrine of equitable estoppel to the arbitration context and there is a dearth of Pennsylvania case law on the issue.  Fortunately, the Third Circuit has provided guidance on what to do in such a situation:

> In the absence of a controlling decision by the Pennsylvania Supreme Court, we must predict how it would rule if faced with the issue. In making such a prediction, "we must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue," as well as to "analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand."

*Spence v. ESAB Group, Inc.*, 623 F.3d 212, 216-17 (3d Cir. 2010) (citation omitted) (quoting *Norfolk S. Ry. Co. v. Basell USA, Inc.*, 512 F.3d 86, 92 (3d Cir. 2008)).  The failure of the parties to follow this guidance makes it difficult to decide the motion to compel arbitration of Count II.

Regardless of this failure, there is an even bigger hurdle to resolving the issue at this juncture, there has been no discovery.  It is not apparent based on the face of the Complaint or the documents relied upon in the Complaint that Count II is subject to an enforceable arbitration clause.  The applicability of equitable estoppel and/or third party beneficiary theories depends upon materials outside the sphere of those that can be considered in a motion to dismiss.  *See e.g.*, *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 168-173 (3d Cir. 2008) (where the district court had converted a 12(b)(6) motion to dismiss a breach of contract claim to a motion for summary judgment to allow discovery on whether the Plaintiff was a third party beneficiary to the contract, the Third Circuit relied upon deposition testimony to determine that a genuine dispute existed as to whether the Plaintiff was a third party beneficiary to the contract under Pennsylvania law).  Therefore, I will deny Unisys' motion to compel arbitration of Count II without prejudice to Unisys to renew this motion under a summary judgment standard, and

allow discovery on the issue of arbitrability. *See Guidotti*, —F.3d—, 2013 WL 2302324, at *8 ("[I]f the complaint and its supporting documents are unclear regarding the agreement to arbitrate . . . then the parties should be entitled to discovery on the question of arbitrability . . . . After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." (internal quotation marks omitted)).  Any renewed motion to compel arbitration should adequately address Pennsylvania's interpretation of equitable estoppel and third party beneficiary theories in the arbitration context.

**IV.  CONCLUSION**

I will deny Unisys' motion to compel arbitration of Count I with prejudice because Plaintiffs' termination from Unisys clearly does not fall within the scope of the arbitration clauses contained in the Employment Agreements that Plaintiffs entered into with Hexaware.  I will deny Unisys' motion to compel arbitration of Count II without prejudice to Unisys to renew the motion under a summary judgment standard after relevant discovery has occurred because it is unclear at this juncture whether Unisys may enforce Plaintiffs' agreement with Hexaware to arbitrate this dispute.

**s/Anita B. Brody**

_____
ANITA B. BRODY, J.


Copies **VIA ECF** on _____ to:     Copies **MAILED** on _____ to: